IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **CHARLES R. CRABLE,** | Case No. 1:23-cv-00978 |
| **Plaintiff,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **CITY OF CLEVELAND, et al.,** | |
| **Defendants.** | **MEMORANDUM OPINION & ORDER** |

Before the Court are two motions.  First is Defendants City of Cleveland ("the City"), Officer Alford, and Officer Parker's Motion for Judgment on the Pleadings filed on September 22, 2023. (Doc. No. 22.)  Second is the City's Motion to Bifurcate and Stay *Monell* Claims filed on the same date.  (Doc. No. 23.)  On October 5, 2023, pro se Plaintiff Charles R. Crable ("Crable") filed Oppositions to both Motions.  (Doc. Nos. 25, 26.)  On October 6, 2023, the City filed a Reply in support of its Motion to Bifurcate. (Doc. No. 28.)  And, on November 10, 2023, Defendants filed a Reply in support of their Motion for Judgment on the Pleadings.  (Doc. No. 29.)

For the following reasons, the Court GRANTS Defendants' Motion for Judgment on the Pleadings, DENIES as MOOT the City's Motion to Bifurcate, and dismisses Crable's state-law causes of action without prejudice.

I. **Procedural History**

On May 15, 2023, Crable filed a Complaint against Defendants. (Doc. No. 1.)  He later filed a First Amended Complaint on September 5, 2023, against the same Defendants.  (Doc. No. 17.) Crable's Amended Complaint contains eight causes of action.  The first four are federal claims under 42 U.S.C. § 1983 for (1) unlawful seizure, (2) false arrest, (3) malicious prosecution, and (4) a *Monell*

claim against the City. (*Id*. at ¶¶ 66-85.) The remaining four are claims under state law for (5) malicious prosecution, (6) false arrest, (7) negligence, and (8) police brutality. (*Id*. at ¶¶ 86-106.)

On September 22, 2023, Defendants moved for judgment on the pleadings on all of Crable's claims, and the City moved to bifurcate and stay Crable's *Monell* claim. (Doc. Nos. 22, 23.) On October 5, 2023, Crable filed Oppositions to both Motions. (Doc. Nos. 25, 26.) On October 6, 2023, and November 10, 2023, Defendants filed Replies in support of their Motion to Bifurcate and Motion for Judgment on the Pleadings, respectively. (Doc. Nos. 28, 29.)

II. **Factual Allegations**

Crable sets forth the following factual allegations in his Amended Complaint. (Doc. No. 17.)

A. **The Incident**

On October 25, 2022, Officers Alford and Parker responded to an incident at 3842 East 149th Street in Cleveland, Ohio. (*Id*. at ¶ 11.) Aaron Brown was renting the house at 3842 East 149th from Crable. (*Id*.) Aaron Brown had called the police to report that Crable "brandished a weapon" while he and his wife, Sonya Brown, were moving out of the house. (*Id*.) When the Officers arrived at the address, Crable, Aaron Brown, and Sonya Brown were all present. (*Id*. at ¶ 12.) Crable was 81 years old at the time of the incident. (*Id*. at ¶¶ 11, 21.)

Crable told Officer Alford that "he had felt threatened" by Aaron Brown who he knew "had been recently arrested for battery against his wife" and who "had broken down the front door" of the rental house. (*Id*. at ¶ 13.) Crable said that Aaron Brown confronted him and made "an aggressive move towards him" before Sonya Brown "called [him] off." (*Id*. at ¶ 14.) Sonya Brown showed the Officers a video of Aaron Brown purportedly "confronting" Crable. (*Id*.)

2

Crable alleges that Officer Alford's body camera recorded his "exculpatory" statement that Aaron Brown confronted him, yet Officer Parker excluded the statement from his police report. (*Id*. at ¶ 15.) Crable also alleges that Officer Alford's body camera recorded Aaron Brown's "admission" that he confronted Crable and not vice versa. (*Id*. at ¶ 16.) Yet Officer Alford "made no attempt" to ask Aaron Brown about Crable's "exculpatory" statement. (*Id*. at ¶ 17.)

Officer Parker included in his police report statements from Aaron Brown and Sonya Brown. (*Id*. at ¶ 18.) Aaron Brown told Officer Parker that his address was 3842 East 149th Street. (*Id*.) According to Crable, Officer Parker knew this was false and Aaron Brown's purported address contradicts the narrative in Officer Parker's police report that Aaron Brown had moved into Sonya Brown's house at another address.[1] (*Id*.) Because Aaron Brown told Officer Parker that he lived at 3842 East 149th Street, which is near where Crable lives at 3840 East 149th Street, Crable was "put under Community Control" for over 198 days, lost his concealed carry permit, and was "denied access" to his house. (*Id*. at ¶¶ 19, 20.) Three weeks later, Crable successfully petitioned the court to change his "control zone" based on Aaron Brown's actual address so that he could again access his house. (*Id*. at ¶ 20.)

Crable alleges that Officers Parker and Alford "provided the false statements that they observed [Crable] pointing and waiving a weapon at and in the direction of the alleged victim Aaron Brown" based on the cell phone video that Sonya Brown showed them. (*Id*. at ¶ 22.) According to Crable, "[t]here is nothing in that evidence cell phone video that even resembles their statements."

---

[1] Crable's allegation is unclear. At the beginning of his Amended Complaint, Crable alleges that Aaron Brown and Sonya Brown "were moving from 3842 East 149th Street," which implies that both Aaron Brown and Sonya Brown were tenants at that address. Yet in paragraph 18, Crable appears to allege that Sonya Brown lived elsewhere, and Aaron Brown had already moved out of 3842 East 149th Street.

3

(*Id*. at ¶ 23.) Rather, the video shows Aaron Brown confronting Crable and Crable "pulling a firearm which is pointed to the ground and resting on [Crable's] left side of his left knee at all times while the alleged victim moved diagonally right approximately six feet away." (*Id*.)

On October 26, 2022, the day after the incident, Detective Devan Wynn conducted a follow-up investigation. (*Id*. at ¶ 28). Officer Alford did not provide Detective Wynn his body cam video nor did Detective Wynn receive Sonya Brown's cell phone video. (*Id*. at ¶ 28.) Aaron Brown told Detective Wynn that he did not want to pursue charges against Crable. (*Id*. at ¶ 32.)

On November 2, 2022, Crable filed a complaint against Officer Alford with the Cleveland Division of Police. (*Id*. at ¶ 30.) According to Crable, the body cam video and cell phone video only came "to light" because of this complaint. (*Id*.) Crable alleges that the body cam video shows Officer Alford "coaching and manipulating the alleged victim Aaron Brown to provide details to meet the elements for [aggravated menacing under Ohio Rev. Code § 2903.21]." (*Id*. at ¶ 31.) Crable further alleges that because of Officer Alford's influence, Aaron Brown and Sonya Brown "provided false statements," which were included in the police report, and which are "contradicted by the cell phone video they themselves provided." (*Id*.)

Senior Investigator Eric Richardson completed a report on Crable's complaint against Officer Alford. (*Id*. at ¶ 30.) Investigator Richardson reviewed Officer Alford's body cam video but not Crable's arrest report. (*Id*. at ¶ 35.) He did not interview Officer Alford. (*Id*.) According to Crable, Officer Alford was "exonerate[ed]" of the complaint against him on March 24, 2023. (*Id*. at ¶ 34.)

Crable alleges that the police report does not document Officer Alford's participation in the incident. (*Id*. at ¶ 36.) Crable further alleges that Officer Alford alone knew of Crable's purported exculpatory statement; yet he hid it from Officer Parker who prepared the police report. (*Id*. at ¶¶ 27,

4

36.) Lastly, Crable alleges that Officer Parker's body cam video "misrepresents" his badge number. (*Id*. at ¶ 37.)

The City charged Crable with aggravated menacing under Ohio Rev. Code § 2903.21. (*Id*. at ¶¶ 31, 40.) On May 10, 2023, one day before the scheduled trial, the City dismissed the charge against Crable. (*Id*. at ¶ 40.)

### B. The City's Policies and Practices

Crable alleges that Officers Alford and Parker acted under the City's and the Cleveland Division of Police's unconstitutional policies to "falsely implicate criminal suspects, including by withholding and/or suppressing exculpatory evidence, fabricating evidence, feeding information to witnesses, and engaging in leading, coercive, and unduly suggestive questioning of and contact with witnesses." (*Id*. at ¶ 42.) These policies date back to the 1970s and have continued to the present. (*Id*. at ¶ 43.) The alleged constitutional violations in the Amended Complaint were, according to Crable, the "highly predictable consequence of a failure to equip Cleveland police officers with the specific tools" to disclose exculpatory evidence, conduct arrests, and write police reports and witness statements. (*Id*. at ¶ 48.)

Crable provides examples of incidents of the "same types of misconduct" as are present in this case. (*Id*. at ¶¶ 50-56.) He alleges that police corruption is widespread and "so well settled as to constitute a *de facto* policy" of the Cleveland Division of Police. (*Id*. at ¶ 58.) It led to a Department of Justice Investigation and, eventually, a "Negotiated Court Enforced Settlement Agreement" to address the Cleveland Division of Police's "structural deficiencies and practices." (*Id*. at ¶ 59-62.) On October 13, 2022, the judge overseeing the settlement agreement found that "while the City has

5

made substantial progress, it has not achieved substantial and effective compliance at this time." (*Id*. at ¶ 64.)

### III. Defendants' Motion for Judgement on the Pleadings

#### A. Rule 12(c) Standard

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)).

The same standard for deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim applies to a Rule 12(c) motion for judgment on the pleadings. *See Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the complaint raises a right to relief above the speculative level— "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555-56). "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)) (internal quotation marks omitted). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

### B.   Pro Se Filings

Because Crable is acting pro se, the Court must "liberally construe" both his Amended Complaint and his Oppositions to Defendants' Motions. *Frengler v. GM*, 482 F. App'x 975, 976 (6th Cir. 2012) (citing *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). This means that the Court must hold Crable's filings "to a less stringent standard than pleadings prepared by attorneys." *Id*. But the Court's leniency has limits. *Id*. (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). It does not exempt Crable from "basic pleading standards." *Johnson v. E. Tawas Hous. Comm'n*, 2021 U.S. App. LEXIS 33270 at *1 (6th Cir. Nov. 9, 2021) (citing *Wells*, 891 F.3d at 594.) "Nor

does it require the Court 'to conjure allegations on [Crable's] behalf' or 'guess at the nature of the claim asserted.'" *Id*. (first quoting *Martin*, 391 F.3d at 714, then quoting *Wells*, 891 F.3d at 594).

### C.  Video Evidence

Crable's Amended Complaint repeatedly refers to Sonya Brown's cell phone video and Officer Alford's body cam video. (*See, e.g.*, Doc. No. 17, ¶¶ 14, 15, 22, 23, 31.) Defendants attached both videos to their Answer.[2] (Doc. No. 20.) And they ask that the Court consider the videos when ruling on their Motion for Judgment on the Pleadings. (Doc. No. 22, PageID# 128.)

In qualified-immunity cases at the motion-to-dismiss stage, a court can consider such video evidence. *Bell v. City of S.field*, 37 F.4th 362, 364 (6th Cir. 2022) (citing *Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017)). However, the Court's consideration of the videos is limited. *Id*. "If there is a factual dispute between the parties, [the Court] can only rely on the videos over the [Amended Complaint] to the degree the videos are clear and 'blatantly contradict[]' or 'utterly discredit[]' [Crable's] version of events." *Id*. (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Otherwise, the Court must accept Crable's allegations as true. *Id*. Put differently, if the videos contradict Crable's factual allegations, then those factual "allegations are implausible," *Bailey*, 860 F.3d at 387, and the Court need not accept them as true. *United States ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 409 (6th Cir. 2016).

---

[2] It is not clear whether the body cam video provided is from Officer Alford's or Officer Parker's body camera. Additionally, Defendants provided the entirety of Sonya Brown's cell phone video, but the body cam video is trimmed to a 50 second clip of Sonya Brown showing the Officers the video she recorded on her cell phone. Crable does not dispute that the Officers watched Sonya Brown's cell phone video before arresting him—in fact, he alleges as such in his Amended Complaint. (Doc. No. 17, ¶ 14 ("the alleged victim's wife provided video").) Because the body cam video is consistent with Crable's Amended Complaint and otherwise unhelpful to the Court's analysis, the Court will not consider it.

8

### D. Section 1983 Causes of Action Against Officers Alford and Parker

Crable's first three section 1983 causes of action are against Officers Alford and Parker for unlawful seizure, false arrest, and malicious prosecution. (Doc. No. 17, ¶ 66-76.) The Officers move for judgment on the pleadings on these claims because (1) the cell phone video "contradict[s] and utterly discredit[s] [Crable's] alternate version of events" and (2) the cell phone video together with the witness identifications and statements established sufficient probable cause for Crable's arrest. (Doc. No. 22, PageID# 130-31.)

Crable does not address the Officers' arguments in his Opposition. He solely responds to the City's argument for judgment on the pleadings of his *Monell* claim. (*See* Doc. No. 26, PageID# 167 ("Plaintiff's First Amended Complaint . . . against [the City] should not be dismissed because Plaintiff has properly pled his *Monell* claim.").) In their Reply, the Officers argue that the Court should dismiss Crable's first three claims for this reason alone. (Doc. No. 29, PageID# 193.) Generally, a plaintiff abandons a claim where he fails to respond to a defendant's motion to dismiss that claim. *See Humphrey v. United States AG Office*, 279 F. App'x 328, 331 (6th Cir. 2008) (noting that "where . . . [a] plaintiff has not raised arguments in the district court by virtue of his failure to oppose defendants' motions to dismiss, the arguments have been waived."); *see also Scott v. Tennessee*, 878 F.2d 382 (6th Cir. 1989) (noting that "if a plaintiff fails to respond or to otherwise oppose a defendant's motion [to dismiss], then the district court may deem the plaintiff to have waived opposition to the motion"). This includes cases where the plaintiff is pro se. *See Weatherby v. Fed. Express*, 454 F. App'x 480, 490 (6th Cir. 2012) (noting that "[t]hough this court provides some leeway to pro se litigants, Plaintiff must still make some effort at argumentation or presentation of facts" and absent such effort, the plaintiff's claims are waived); *see also Bryant v. McDonough*, 2021 U.S. Dist. LEXIS 221273 at *23

9

(N.D. Ohio Nov. 17, 2021), *aff'd*, 72 F.4th 149 (6th Cir. 2023) (dismissing a pro se plaintiff's claim on a motion to dismiss where she failed to address the defendant's arguments in her opposition); *Viola v. Ohio AG*, 2021 U.S. Dist. LEXIS 26701 at *63 (N.D. Ohio Feb. 11, 2021) (same). Accordingly, the Court could grant the Officers' Motion for Judgment on the Pleadings for this reason alone.

Even if the Court were to disregard Crable's failure to respond, dismissal is still appropriate for the reasons set forth in the next section.

### 1. Qualified Immunity

Qualified immunity protects public officials like Officers Alford and Parker from section 1983 causes of action "when their conduct does not violate the plaintiff's 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jackson v. City of Cleveland*, 64 F.4th 736, 745 (6th Cir. 2023) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). To overcome qualified immunity, Crable "must plausibly allege facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Id*. (quoting *Moderwell v. Cuyahoga Cty.*, 997 F.3d 653, 659-60 (6th Cir. 2021)). The Court may consider these questions in any order. *Crawford v. Tilley*, 15 F.4th 752, 763 (6th Cir. 2021) (citing *Pearson*, 555 U.S. at 236.)

Generally, it is "inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Id*. But this reluctance does not "appl[y] to the violation-of-a-constitutional-right prong." *Id*. Moreover, the Officers' "entitlement to qualified immunity is a threshold question to be resolved at the earliest point." *Hart v. Hillsdale Cty.*, 973 F.3d 627, 635 (6th Cir. 2020) (quoting *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015)).

The Court begins with the first qualified immunity question: whether Officer Alford and/or Officer Parker violated Crable's statutory or constitutional rights.

### 2. Probable Cause

Crable alleges three constitutional violations: unlawful seizure, false arrest, and malicious prosecution. All three of these claims arise under the Fourth Amendment. And all three require that Crable allege that the Officers lacked probable cause. *See, e.g., Garavaglia v. Gogebic Cty.*, 2024 U.S. App. LEXIS 2192, at *7 (6th Cir. Jan. 30, 2024) (noting that a lack of probable cause is the crux of Fourth Amendment claims for false arrest and malicious prosecution). Both unlawful seizure and false arrest require that Crable plausibly allege that Officers Alford and Parker lacked probable cause to arrest him. *Davis v. Butler Cty., Ohio*, 658 F. App'x 208, 214 (6th Cir. 2016) (quoting *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002)). Similarly, malicious prosecution requires that Crable plausibly allege that "1) a criminal prosecution was initiated against [him] and the defendants made, influenced, or participated in the decision to prosecute; (2) *there was no probable cause for the criminal prosecution*; (3) as a consequence of the legal proceeding, [Crable] suffered a deprivation of liberty under the Fourth Amendment, apart from the initial seizure; and (4) the criminal proceeding was resolved in [Crable's] favor." *Garner v. Harrod*, 656 F. App'x 755, 758 (6th Cir. 2016) (citing *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010)) (emphasis added).

Probable cause exists when, at the time of the arrest, "the facts and circumstances within the officer's knowledge and of which she had reasonably trustworthy information are sufficient to warrant a prudent man in believing that the plaintiff committed or was committing an offense." *Wesley*, 779 F.3d at 429 (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)) (brackets omitted). The Officers' "probable cause determination is based on the 'totality of the circumstances'" *Id*. (quoting

*Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000)). "An eye witness's statement that he or she saw a crime committed or was the victim of a crime is generally sufficient to establish probable cause." *United States v. Shaw*, 464 F.3d 615, 623 (6th Cir. 2006).

The Officers arrested Crable for aggravated menacing under Ohio Rev. Code § 2903.21. (*Id*. at ¶ 31.) Section 2903.21 provides, in pertinent part:

> No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family. . . . Whoever violates this section is guilty of aggravated menacing.

Ohio Rev. Code § 2903.21(A)-(B). Crable alleges that the Officers arrested him after viewing Sonya Brown's cell phone video and taking statements from her and her husband, Aaron Brown. (Doc. No. 17, ¶¶ 14, 22.) And he alleges that the Officers lacked probable cause because the cell phone video "clearly shows" Aaron Brown confronting Crable and contradicts Aaron Brown's and Sonya Brown's statements that Crable pointed and waived a gun in their direction. (*Id*. at ¶¶ 22, 23, 31.) At this stage, the Court must accept these allegations as true unless the cell phone video blatantly contradicts or utterly discredits Crable's version of events. *Bell*, 37 F.4th at 364. For the following reasons, the Court concludes that it does.

The cell phone video is twenty-two seconds long. It begins with Crable standing on the tree lawn in front of 3842 East 149th Street. He is reaching into his left pants pocket with both hands. Several feet in front of him, at the end of the walkway leading from the sidewalk to the house, is Aaron Brown. Aaron Brown has both hands clasped in front of him. Crable and Aaron Brown are speaking as Crable continues to rummage in his left pocket. At the three second mark, Crable pulls a pistol from his left pocket. As he is pulling it out, he points it in the direction of Aaron Brown and Sonya Brown, who is filming. Crable then lowers the pistol to his left side and begins walking toward

Aaron Brown. Aaron Brown steps backward. At the seven second mark, Aaron Brown turns around and walks back toward the house. Crable continues advancing. Around the ten second mark, Aaron Brown again faces Crable with both hands in front of him. He then steps off to Crable's right, leaving the video frame.

After Aaron Brown steps away, Crable faces Sonya Brown. Crable tries putting the pistol back in his left pocket, but he gives up. He takes a few steps forward toward Sonya Brown, still holding the pistol at his left side. At the eighteen second mark, Crable is approximately halfway between the sidewalk and the house. Crable then takes a half step backward, and the video ends.

The cell phone video has audio, but only Sonya Brown's voice is clear. At the beginning of the video, she says to Crable, "You calling me a what? You calling me a bitch?" She then says, in response to something Crable says, "OK, I got you." As Crable is pulling the pistol from his pocket, Aaron Brown exclaims, "He's got a gun!" Sonya Brown responds, "OK, what is he going to do, shoot both of us?" She then says to Crable, "OK, then put your gun back in your pocket. I hope you have [a] CCW." Crable replies, "I'll keep my gun." Crable says something inaudible near the end of the video to which Sonya Brown responds, "OK, OK, you keep saying that."

The video blatantly contradicts Crable's allegation that Aaron Brown confronted him. Aaron Brown's body language is non-threatening throughout the entire video. He never moves toward Crable, he backs up each time Crable steps forward, his hands are always visible, he never raises his hands, he never reaches into his pockets, and he never yells at Crable. In short, Aaron Brown never does anything that is in any way confrontational toward Crable. Moreover, the video utterly discredits Crable's allegation that there is nothing in the video that "even resembles" Aaron Brown's and Sonya Brown's statements that Crable "point[ed] and wav[ed] a weapon" in their direction. The video

13

records Crable pulling a pistol from his pocket, briefly pointing the pistol at Aaron Brown and Sonya Brown, and advancing toward them with the pistol in his hand and at his side.

As noted above, an eyewitness's statement that she saw a crime or was a victim of a crime is "generally sufficient to establish probable cause." *Shaw*, 464 F.3d at 623 (6th Cir. 2006). The exception is if the officer had an apparent reason to believe the eyewitness "was lying, did not accurately describe what she had seen, or was in some fashion mistaken regarding her recollection." *Alexander v. Harrison*, 2022 U.S. App. LEXIS 29854 at *15 (6th Cir. Oct. 24, 2022) (quoting *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999)) (brackets omitted). Here, the Officers had eyewitness statements *and* a video that was consistent with and confirmed those statements. The cell phone video thus dispelled any reason for the Officers to believe that Aaron Brown and Sonya Brown were not telling the truth or not accurately describing what they saw.

The Officers[3] therefore had sufficient probable cause to arrest Crable, and Crable's allegations that they lacked probable cause are implausible in view of the video. *See Manuel v. City of Columbus*, 86 F. App'x 852, 855 (6th Cir. 2004) (concluding that police had probable cause to arrest the plaintiff for aggravated menacing under Ohio law where four witnesses claimed that the plaintiff "pointed a gun at them while they were standing at a bus stop"); *Thornton v. City of Columbus*, 2017 U.S. Dist. LEXIS 91142 at *45 (S.D. Ohio June 14, 2017) (noting that "flashing or brandishing a firearm" is sufficient to establish probable cause under Ohio's aggravated menacing statute); *Edvon v. Morales*,

---

[3] Crable does not differentiate between Officer Alford and Officer Parker in his probable cause allegations. While courts should assess each defendant's entitlement to qualified immunity on an "individual basis," *Schulkers v. Kammer*, 955 F.3d 520, 533 (6th Cir. 2020), the Court does not do so here because Crable alleges that Officers Alford and Parker both arrested him based on the same probable cause. *See Howard v. Livingston Cty.*, 2023 U.S. App. LEXIS 1540 at *44 n.1 (6th Cir. Jan. 20, 2023) (Thapar, J., concurring in part and dissenting in part) (considering two defendants together for qualified immunity "because the complaint alleges that they both participated in the investigation").

2018 Ohio App. LEXIS 5484 at *12 (Ohio 8th Dist. Ct App. Dec. 20, 2018) (concluding that police had probable cause to arrest the plaintiff for aggravated menacing where the plaintiff exited his apartment and pointed a firearm at two neighbors).

In his Amended Complaint, Crable makes a second allegation against Officer Alford in particular. He alleges that Officer Alford lacked probable cause because he "made no attempt to address" Crable's allegedly exculpatory statement that he felt threatened by Aaron Brown. (*Id*. at ¶¶ 13, 14, 21, 27.) But "[o]nce probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused." *Ahlers*, 188 F.3d at 371. This means that a defendant's "provision of a plausible exculpatory explanation" does not negate probable cause. *United States v. Visnich*, 30 F. App'x 524, 531 (6th Cir. 2002) (Moore, J., dissenting) (citing *Ahlers*, 188 F.3d at 371). Accordingly, Crable's "exculpatory" explanation that he "felt threatened" does not negate Officer Alford's probable cause to arrest Crable. This is doubly true given that the cell phone video which Officer Alford viewed before the arrest blatantly contradicts and utterly discredits Crable's version of events.

For the above reasons, Crable has failed to plausibly allege that the Officer's lacked probable cause to arrest him. As such, he has failed to plausibly allege that the Officers violated his constitutional rights. The Court therefore grants Officers Alford and Parker's Motion for Judgment on the Pleadings on Crable's first three causes of action.

E. *Monell* **Claim Against the City**

Crable's fourth cause of action is under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). It alleges that the City has a "custom, policy and/or practice of permitting its police officers to make false and misleading statements" to establish probable cause for arrests and prosecutions.

15

(Doc. No. 17, ¶ 79.)  It further alleges that the City "implicitly authorized, approved, and knowingly acquiesced in the unconstitutional conduct against [Crable]." (*Id*. at ¶ 84.)  But in order for the City to be liable under *Monell*, there must first be "an underlying constitutional violation." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014).  Because Crable has not plausibly alleged that Officers Alford and Parker violated his constitutional rights, Crable's *Monell* claim also fails. *See, e.g., Davis v. Chorak*, 2023 U.S. App. LEXIS 6133 at *8 (6th Cir. Mar. 14, 2023) (granting the defendant municipality's motion to dismiss where the plaintiff failed to plausibly allege a constitutional violation).  The Court therefore grants the City's Motion for Judgment on the Pleadings on Crable's *Monell* claim.

F.  **State-Law Causes of Action**

Crable's remaining four causes of action allege violations of Ohio state law.  This Court "has discretion as to whether to exercise supplemental jurisdiction after dismissing the claims over which it has original jurisdiction." *Miller v. Collins*, 2023 U.S. App. LEXIS 29681 at *10 (6th Cir. Nov. 6, 2023) (citing 28 U.S.C. § 1367(c)(3)).  "When deciding whether to exercise supplemental jurisdiction, courts consider and weigh 'the values of judicial economy, convenience, fairness, and comity.'" *Id*. (quoting *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010)).

"When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996).  Here, after considering and weighing the above factors, the Court declines to exercise supplemental jurisdiction over Crable's remaining state-law claims and dismisses those claims without prejudice.

16

**IV.	Motion to Bifurcate**

As the Court has granted the City's Motion for Judgment on the Pleadings on Crable's *Monell* claim, the City's Motion to Bifurcate that claim is denied as moot.

**V.	Conclusion**

For the foregoing reasons the Court GRANTS Defendants' Motion for Judgment on the Pleadings and dismisses Crable's first four federal causes of action. The Court DENIES as MOOT the City's Motion to Bifurcate Crable's *Monell* claim. Lastly, the Court declines to exercise supplemental jurisdiction over Crable's state-law claims and dismisses those claims without prejudice.

**IT IS SO ORDERED.**

Dated: February 16, 2024	  *s/ Pamela A. Barker*
	PAMELA A. BARKER
	UNITED STATES DISTRICT JUDGE